UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JONOVAN J. MORRIS
                                            CIVIL ACTION

VERSUS
                                            NUMBER 13-66-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

**RULING ON SOCIAL SECURITY APPEAL**

Plaintiff Jonovan J. Morris, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income benefits ("SSI").[1]

Based on the standard of review and the analysis which follows, the Commissioner's decision is reversed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.

---

[1] Plaintiff was under the age of 18 at the time of his application, and had attained the age of 18 at the time of the ALJ's decision. Therefore, the ALJ considered the plaintiff's application for SSI benefits under the law and regulations governing adult and children's claims for SSI benefits. AR p. 24.

*Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).[2] If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272

---

[2] It is well established that in cases brought under 42 U.S.C. §405(g), evidence external to the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1,2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Haywood v. Sullivan*, 888 F.3d 1463, 1471 (5th Cir. 1989).

(5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

**Adult Claim for SSI Benefits**

A claimant has the burden of proving that he or she suffers from a disability. A disability is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and

mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 416.925.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Child Claim for SSI Benefits**

Effective August 22, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 changed the law for determining disability in childhood disability SSI cases. Essentially, the changes eliminated the fourth step which required

the Commissioner to complete an individualized functional assessment to determine whether a child's impairments were comparable in severity to those which would disable an adult.[3]

Under the current statute and regulations, an individual under the age of 18 is considered disabled if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *Harris v. Apel*, 209 F.3d 413, 418 (5th Cir. 2000). A three step sequential analysis is used to evaluate claims for children's SSI benefits. These steps are: (1) Is the claimant engaged in substantial gainful activity? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the claimant's impairment meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1? 20 C.F.R. § 416.924(a)-(d).

At the third step, if a claimant's impairments do not meet or medically equal any listing, a determination is made as to whether the impairments result in limitations that functionally equal a listing. 20 C.F.R. § 416.926a(a). Functional equivalency requires

---

[3] The elimination of the fourth step effectively returns the process for evaluating disability in children to that used prior to 1990 when the Supreme Court decided *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990). *Harris*, 209 F.3d at 417-18.

consideration of how the claimant functions in terms of six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do. The six domains are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A claimant's impairments functionally equal the listings if they are of listing-level severity. Impairments are of listing-level severity if the claimant has marked limitations in two domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d).

Limitation in a domain is "marked" when impairments interfere seriously with the claimant's ability to independently initiate, sustain, or complete activities. Daily functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. Marked limitation is more than moderate, but less than extreme. Extreme limitations in a domain occur when a claimant's impairments interfere very seriously with the ability to independently initiate, sustain or complete activities. An extreme limitation means more than marked, and is also the rating given to the worst limitations. However, this does not necessarily mean there is a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(2)(i) and 3(i).

6

**Background and Claims of Error**

Plaintiff was 18 years old at the time of the ALJ's decision.[4] Plaintiff filed for SSI benefits in August 2010 and stated in his application that in August of 2004 he became disabled. AR pp. 92-98. In his application the plaintiff alleged that he is disabled because of bipolar disorder, depression, anger and mental problems. AR p. 140. Plaintiff went through the eleventh grade in school, and has no past relevant work because he has never been employed. AR pp. 45, 112, 143-44.

After his application was denied at the initial stage, the plaintiff requested a hearing before an administrative law judge ("ALJ"). After the hearing the ALJ issued an unfavorable decision. AR pp. 21-38, 44-50.[5] The ALJ found at the second step of the disability evaluation process for adult and child's SSI claims that the plaintiff had a combination of severe impairments - borderline intellectual functioning, attention deficit hyperactivity disorder, and affective disorder. AR pp. 29, 35. At the third step the ALJ found that these conditions did not meet or medically equal the criteria of any listed impairment under 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The ALJ wrote the following paragraph

---

[4] Plaintiff's age placed him in the category of "younger person." 20 C.F.R. § 416.963(c).

[5] Plaintiff exhausted his administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

under both step three findings:

> A comparable review of the objective evidence with the Listing of Impairments leads the undersigned to conclude that these impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. In reaching this conclusion, the undersigned has considered the opinions of the State Agency medical consultants who evaluated the claimant's impairments and have reached the same conclusion. AR pp. 29, 35-36.

Thus, the ALJ made a general finding that the plaintiff's impairments did not meet or medically equal one of the impairments found in the Listing of Impairments. The ALJ did not cite and analyze the objective evidence as it related to any specific listing, or make a finding that the plaintiff did not meet a particular listed impairment, such as Listings 112.05D and 12.05C (Mental Retardation), Listing 112.11 (Attention Deficit Hyperactivity Disorder), or Listings 112.04 and 12.04 (Mood and Affective Disorders).[6]

At this point in the decision, the ALJ's analysis diverged based on the different standards governing child and adult disability claims. With regard to whether the plaintiff's severe impairments functionally equaled a listed impairment, the ALJ evaluated the evidence in light of the six domains of function - acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating

---

[6] These are the listings relevant to the ALJ's finding at step two that the plaintiff's combination of severe impairments were borderline intellectual functioning, affective disorder, and ADHD.

objects, caring for yourself, and health and physical well-being. The ALJ concluded that the plaintiff had less than marked limitations in the first three of these domains, and no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. Therefore, based on these findings the plaintiff was not disabled before he became 18. AR pp. 29-35.

Returning to the sequential analysis governing adult disability claims, the ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairments, the plaintiff was able to do other work that existed in significant numbers in the national economy.[7] The ALJ made a finding that the plaintiff had a RFC to perform a full range of work at all exertional levels, but had the following nonexertional limitations - limited to one-two-three step instructions in a low stress environment, with personal contact incidental to the work performed, and the complexity of tasks is learned by rote or experience.[8] AR p. 36. With this RFC, and considering the plaintiff's age and educational background, the ALJ concluded at the fifth step that the plaintiff was not disabled

---

[7] Since the plaintiff had no past relevant work the ALJ did not make a finding at step four.

[8] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 416.945.

based on the application of the Medical-Vocational Guidelines, Rule 204.00.[9] AR pp. 37-38. Although the plaintiff had nonexertional limitations, the ALJ found they "would be of little significance in the broad world of work and would not prohibit him from performing the basic mental demands of competitive, renumerative, unskilled work,[10] leaving the occupational base virtually intact," and having no significant adverse effect on the unskilled occupational base. Therefore, the ALJ concluded he did not need input from a vocational expert, and could rely on the Medical-Vocational Guidelines to reach his final determination that the plaintiff is not disabled. AR pp. 37-38.

Plaintiff's argument that the ALJ committed reversible error focused on Listing 112.05D and Listing 12.05C - listings which set forth the requirements for the impairment of mental retardation in children and adults. Plaintiff argued that despite the evidence in the record which shows he meets these listings, the ALJ failed to specifically address them in his decision. Plaintiff asserted that the ALJ neither explicitly evaluated the validity of the listing-

---

[9] The ALJ also cited and relied on Social Security Ruling 85-15.

[10] The ALJ stated that the basic mental demands of competitive, remunerative, unskilled work included the abilities to understand, carry out and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. The ALJ found that the evidence from the plaintiff's treating physicians and consultative examiners showed that the plaintiff has the ability to meet these demands of unskilled work. AR p. 38.

level IQ scores obtained in two consultative examinations,[11] nor did he consider whether the objective evidence established the other elements of the listing. Rather, plaintiff asserted, the ALJ merely made a general finding that the plaintiff's impairments were not severe enough to meet or medically equal a listed impairment. According to the plaintiff, this prevents adequate judicial review of whether there was substantial evidence to support the ALJ's finding at the third step. Plaintiff also argued the ALJ's conclusion that his impairments did not functionally equal the listings under the children's disability standards was not supported by substantial evidence. Plaintiff contended the ALJ's finding that he had less than marked limitations in attending and completing tasks, and in interacting and relating to others, lacked substantial evidence.

The Commissioner argued that substantial evidence supports the ALJ's finding that the plaintiff's impairments did not functionally equal the listings under the child disability standards. With regard to Listings 12.05C and 112.05D, the Commissioner argued that substantial evidence supported the ALJ's conclusion that the plaintiff's impairments are not severe enough to meet or medically

---

[11] Psychologist William L. Fowler performed a consultative psychological evaluation on October 20, 2010. He administered the WAIS-IV and reported a full scale score of 60 and a verbal comprehension score of 68. AR pp. 228-31. Psychologist Scuddy F. Fontenelle, III performed a psychological evaluation on January 12, 2011. He also administered the WAIS-IV and reported a full scale score of 66 and a verbal comprehension score of 74. AR pp. 234-37.

equal one of the impairments listed in Appendix 1. The Commissioner noted that the plaintiff has the burden of establishing the medical findings necessary to support each of the requirements for Listings 12.05C and 112.05D. The Commissioner argued that the plaintiff cannot meet this burden because: (1) the ALJ's finding that the plaintiff had a severe impairment of borderline intellectual functioning,[12] rather than mental retardation, shows the ALJ determined the plaintiff did not meet the diagnostic description and other requirements of the listings; and, (2) the plaintiff cannot establish that he has IQ scores within the listing range of 60 through 70 because the ALJ found and the record supports the finding, that neither of the two IQ test scores are valid.

**Analysis**

The law and regulations applicable to Listing 12.05C and Listing 112.05D are as follows.

To satisfy the requirements of Listing 12.05C. a formal diagnosis of mental retardation is not required.[13] Rather, the

---

[12] The Commissioner asserted that this finding is supported by both Fontenelle and the state agency psychological consultant Judith Levy, who reported a diagnosis of borderline intellectual functioning. AR pp. 58, 237.

[13] *Morris v. Astrue*, 2011 WL 7341504 (E.D.La. Dec. 14, 2011), report and recommendation adopted, 2012 WL 519629 (E.D.La. Feb. 15, 2012), citing, *Maresh v. Barnhart,* 438 F.3d 897, 899 (8th Cir. 2006).

regulations and case law establish the criteria that must be satisfied for Listing 12.05C. Listing 12.05C provides, in relevant part, as follows:

> 12.05 *Mental Retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairments before age 22.
>
> The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The medical criteria for Listing 112.05D, which covers mental retardation in children under the age of 18, is the same except that the introductory paragraph's diagnostic description leaves out the requirement that the evidence demonstrate onset of the impairment before the age of 22.

In *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009), the Fifth Circuit held that to establish disability under Listing 12.05C., a claimant has the burden of showing that his impairment satisfies the introductory paragraph's diagnostic description, and demonstrating the severity criteria of paragraph A, B, C or D. Thus, to establish disability under Listing 12.05C, the claimant must satisfy not only the requirements of Subsection C itself — low IQ scores and another physical or mental impairment, but also the

13

requirements of the "introductory paragraph" — the claimant has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *James v. Astrue*, 2011 WL 202140, 6 (W.D.La.,2011), citing, *Randall*, 570 F.3d at 662.

Listing 12.05C. does not define "adaptive functioning." However, the Fifth Circuit has indicated that the definition of "adaptive activities" found in § 12.00(C)(1) should be used. Thus, adaptive functioning encompasses adaptive activities "such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."[14] *Arce v. Barnhart,* 185 Fed.Appx. 437 (5th Cir. 2006)(unpublished)*, citing also*, *Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir. 2005). Under the regulations, where the verbal, performance and full scale IQs are provided in the Wechsler series, the Commissioner uses the lowest of the three in conjunction with Listing 12.05. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.1, 12.00(D)(6)(c). The ALJ is not required to accept the reported scores. He may decide not to fully credit them if there is evidence that shows they are unreliable, invalid, or inconsistent with other evidence contained in the record. *See*, *Cole v.*

---

[14] 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1, § 12.00(C)(1).

*Barnhart*, 69 Fed.Appx. 658 (5th Cir. 2003); *Jones v. Barnhart*, 2007 WL 628768 *7 (W.D.Tex. Feb. 21, 2007).

The Fifth Circuit has not yet specifically addressed whether a step two finding that an impairment is severe is the equivalent of the "significant work-related limitation of function" requirement of the second part of paragraph C of Listing 12.05. However, the introduction to Listing 12.00 (Mental Disorders) indicates that this is the correct standard.[15] It states that for paragraph C the degree of functional limitation the additional impairment imposes is assessed "to determine if it significantly limits your physical or mental ability to do basic work activities," i.e., is a severe impairment as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment does not cause limitations that are severe, as defined by the regulations, "we will not find that the additional impairment imposes an additional and significant work-related limitation of function." Listing 12.00A.

Considering the above legal standards, the Commissioner's arguments for upholding the ALJ's decision are unconvincing. It is apparent from a review of the ALJ's decision that he made a general finding at step three, but he did not specifically address and analyze the evidence in light of the listed impairments directly

---

[15] *See, Henderson v. Astrue*, 2008 WL 269450 (N.D.Tex. Jan. 30, 2008); *Cargill v. Colvin*, 2013 WL 5526620 (N.D.Tex. Sept. 30, 2013).

related to the plaintiff's intellectual functioning - Listings 12.05C and 112.05D. Furthermore, the only basis the ALJ cited to support his general finding were opinions of the State Agency medical consultants who evaluated the claimant's impairments; but these also did not consider Listing 12.05C or 112.05D.[16]

The Commissioner appeared to argue that this omission in the ALJ's analysis at the third step was harmless error.[17] The Commissioner asserted that the ALJ resolved the conflict between the IQ tests results and the psychologists' questioning of the results by not adopting either of the test scores. According to the Commissioner, the ALJ properly provided reasons for finding the scores were not valid by citing comments included in the reports of Fowler and Fontenelle.[18]

---

[16] Neither the Fowler nor the Fontenelle report included an analysis or opinion on whether the plaintiff met the requirements of any listed impairment. Levy cited several listings in her review - Listing 112.02 (Organic Mental Disorders), Listing 112.04 (Mood Disorders), Listing 112.11 (ADHD) — but did not cite Listing 112.05D (Mental Retardation).

[17] The policy underlying the harmless error rule is to preserve judgments and avoid waste of time. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Thus, procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

[18] The Commissioner also appeared to argue that the ALJ's decision is supported by the fact that neither Fowler nor Fontenelle diagnosed the plaintiff as mentally retarded. Again, a
(continued...)

The difficulty with accepting the Commissioner's argument is that the ALJ only cited these comments regarding the test scores in the context of (1) his general review of the evidence, (2) analyzing the plaintiff's limitation in acquiring and using information, and (3) making his RFC determination.  The ALJ did not cite or rely on these statements in his analysis at step three. Moreover, the ALJ did not specifically address Listing 12.05C or 112.05D in his decision, and never made an explicit finding that the listing-level IQ scores obtained from WAIS-IV tests administered by Fowler and Fontenelle were not valid.[19]  This is not

---

[18](...continued)
formal diagnosis of mental retardation is not required to satisfy Listing 12.05C or 112.05D.
    The Commissioner also stated that the Fifth Circuit has held that low IQ scores in the absence of a diagnosis of mental retardation do not constitute disabling impairments, citing *Johnson v. Sullivan*, 894 F.2d 683 (5th Cir. 1990) and *Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988).  Record document number 8, Defendant's Opposition Memorandum, p. 8.  However, a review of these decisions does not support the Commissioner's statement of the court's holdings.  *Johnson v. Sullivan* involved an ALJ's decision at the fifth step using the Medical-Vocational Guidelines.  In the context of affirming the ALJ's decision, the court rejected the argument that the claimant had a nonexertional impairment that prevented use of the Guidelines by noting evidence that a clinical psychologist examined the claimant and concluded that he was not mentally retarded.  In *Johnson v. Bowen*, the court's basis for upholding the ALJ's conclusion that the claimant did not meet the requirements of Listing 12.05C was unrelated to the IQ scores.  It was because the court found there was substantial evidence to support the ALJ's conclusion that the claimant did not have a physical or other mental impairment that imposed an additional and significant work-related limitation.

    [19] Although both Fowler and Fontenelle included comments in their reports which suggested that the plaintiff's IQ results be
(continued...)

17

harmless error. Because the ALJ failed to make necessary findings at the third step, his summary conclusion at step three is beyond meaningful judicial review. Put another way, because the ALJ neglected to address a listed impairment that is plainly applicable to the plaintiff,[20] and failed to make a specific finding on the validity of the intelligence test scores and the other criteria of the listing, the court is unable to determine whether the final decision is based on substantial evidence.[21]

## Conclusion

As noted above, it is the role of the ALJ — not the court — to weigh the evidence, make credibility choices, and then make the

---

[19](...continued) considered or interpreted with caution, neither stated that the results were not valid. AR pp. 230, 236.

[20] The record as a whole contains evidence, which if credited by the ALJ, could support a finding the plaintiff's impairment is severe enough to meet or medically equal Listing 12.05C or 112.05D. The full scale WAIS-IV scores reported by Fowler and Fontenelle were 60 and 66, respectively, which falls within the listing's requirement of a verbal or full scale IQ score of 60 through 70. Based on the ALJ's finding at step two, the plaintiff has other severe mental impairments - ADHD and affective disorder. There is also evidence in the record which could support the conclusion that the plaintiff has significantly subaverage general intellectual functioning with deficits in adaptive functioning. See, e.g., AR pp. 47-49, 109-12, 115, 129-32, 158, 183, 228-29, 234-37.

[21] *See, Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007). When the evidence of record appeared to demonstrate that the claimant met Listing 1.04A, and the ALJ did not specifically address this listing, the ALJ's conclusory statement that the claimant failed to meet any listed impairment was beyond meaningful judicial review - the court simply cannot tell whether or not the decision is based on substantial evidence. *Id.* at 448.

findings necessary to determine whether the plaintiff is disabled. Consequently, the case must be remanded so the Commissioner can reevaluate the plaintiff's claim for benefits and make the findings needed to properly determine whether the plaintiff is disabled. These findings should include: (1) whether any intelligence test scores obtained are invalid; (2) whether the plaintiff's severe impairments meet or equal the criteria for Listing 112.05D and Listing 12.05C (Mental Retardation), or any other listed impairment applicable to the plaintiff's severe impairments; and, (3) if necessary, whether the plaintiff is disabled under the remaining steps of the disability analysis.[22]

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application for SSI benefits by plaintiff Jonavon Jovante Morris is reversed, and this case is remanded to the Commissioner for reevaluation of the plaintiff's claim for supplemental security income benefits.

A separate judgement will be entered.

Baton Rouge, Louisiana, April 11, 2014.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[22] Since this error requires remand it unnecessary to address the plaintiff's remaining arguments in support of his appeal.